IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

**FILED**

MAR 15 2017

Clerk, U S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>vs.<br><br>BRIAN F. CHARETTE,<br><br>Defendant-Appellant. | CR 16–32–M–DLC<br><br>ORDER AND OPINION |

Defendant Brian F. Charette ("Charette") appeals his judgment and sentence, entered July 20, 2016, by Magistrate Judge Jeremiah C. Lynch. For the reasons that follow, the Court affirms.

## FACTUAL BACKGROUND

On the morning of May 11, 2014, Charette and his wife awoke to their dogs barking loudly. They went downstairs, looked out a window, and saw a sow grizzly bear with her two yearlings outside their home in rural Ronan, Montana. Charette testified at trial that from the back windows of his house he saw the grizzly bear rear up and stand on or climb the horse pasture fence on his property. Charette grabbed his .270 rifle and shot the sow. Charette explained that he and

-1-

his friend, James Inman, drove a pickup truck into the pasture and hauled the sow's corpse to the rear of the pasture, toward the tree-line.

Ms. Charette, Charette's wife at the time of the incident and now ex-wife, testified that they woke up to dogs barking and a commotion outside their home. Ms. Charette said she saw three grizzly bears chasing horses in the pasture about 20 to 30 yards from the house, but that the bears were not advancing toward the house. Ms. Charette remembered a gun shot and saw a bear falling down. However, she testified that the Defendant and her have only vaguely mentioned the incident since that day.

Rusty Carl, Charette's step-father, was staying at a cabin on Charette's property with Charette's mother at the time of the incident. Carl was outside gardening that morning. Carl indicated that he heard a gun shot and a commotion, looked up, and saw a bear chasing a dog on the pasture side of the fence. Carl then heard a second gun shot and saw a bear go down at the fence line.

On December 9, 2014, Tribal Fish and Game for the Confederated Salish and Kootenai Tribes did an initial search for the grizzly bear's carcass where Charrette indicated he disposed of the body. Due to heavy snow, the carcass was not found. Two more attempts to find the carcass were also unsuccessful.

After being federally indicted, Charette attempted to plead guilty on two

-2-

occasions to the offense. However, Magistrate Lynch did not accept the pleas because Charette equivocated on whether he had acted in self-defense or defense of others. The court then set the matter for a bench trial, at the conclusion of which the magistrate judge found Charette guilty of one count of unlawful taking of a threatened species in violation of the Endangered Species Act. 16 U.S.C. §§ 1538(a)(1)(G) and 1540(b)(1). Charette's attorney submitted an oral motion for acquittal at trial, the court reserved ruling, and later denied the Rule 29 motion. (Doc. 3-1 at 106–114.) Charette was sentenced to six months of imprisonment and ordered to pay $5,000 in restitution. Charette appeals from the judgment and sentence.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 58(g)(2)(A) provides that a party "may appeal an order of a magistrate judge to a district judge . . . if a district judge's order could similarly be appealed." The magistrate judge had jurisdiction over this matter pursuant to 18 U.S.C. §§ 3231 and 3401. Thus, this Court has jurisdiction over Charette's appeal under 18 U.S.C. §§ 3231 and 3402. The Court considers questions of law de novo and reviews factual determinations for clear error. *U.S. v. Ziskin*, 360 F.3d 934, 943 (9th Cir. 2003).

## DISCUSSION

Charette raises three issues on appeal: (1) that the trial court's denial of a jury trial violated his constitutional rights; (2) that the trial court erred in defining the elements of his charged offense; and (3) that the trial court erred in denying Charette's Rule 29 motion for a judgment of acquittal.

## I.    Sixth Amendment Right to Trial by Jury

Charette argues that he was denied his constitutional right to a jury trial. This issue was not fully briefed, because Charette's counsel acknowledged this Court's ruling in *United States v. Wallen*, 2016 WL 282851 (D. Mont. 2016), and simply raised this issue to preserve it for appeal. The Court adheres to its decision in *Wallen* that this offense is considered a petty offense and not a serious offense because it carries a maximum sentence of six months. 16 U.S.C. §§ 1538(a)(1)(G), 1540(b)(1); *Lewis v. United States*, 518 U.S. 322, 326–327 (1995) ("An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious."). Thus, Charette's Sixth Amendment right to a trial by jury was not triggered.

## II.    Elements of His Charged Offense

Charette also argues that the trial court applied an erroneous element to find

him guilty beyond a reasonable doubt. Again, while acknowledging this Court's decision in *Wallen*, Charette preserved this issue for appeal and did not provide briefing on the subject. This Court stands by its decision in *Wallen* on this issue.

## III. Rule 29 Motion for Acquittal

Charette argues that the trial court erred in denying his Rule 29 motion for a judgment of acquittal. Charette contends that an acquittal is mandatory here because the Government failed to prove the essential elements of the offense beyond a reasonable doubt. Based on the current status of Ninth Circuit law, to be convicted of knowingly taking an endangered species the Government must prove beyond a reasonable doubt, that: "(1) [the defendant] knowingly killed a bear; (2) the bear was a grizzly; (3) [the defendant] had no permit from the United States Fish & Wildlife Service to kill a grizzly bear; and (4) [the defendant] did not act in self-defense or in the defense of others." *United States v. Clavette*, 135 F.3d 1308, 1311 (9th Cir. 1998). Specifically, Charette asserts that the Government did not prove element three: that Charette did not have a permit from the United States Fish and Wildlife Service to kill the grizzly bear.[1]

---

[1] The Court notes that the elements adopted *United States v. Clavette*—the leading case on this issue—were taken from 50 C.F.R. § 17.40(b)(1)(i) (1996). After further review, the Court noticed that previous versions of the Code of Federal Regulations allowed permits for sport hunting of grizzly bears. *See* 50 C.F.R. § 17.40(b)(1)(i)(E) (1988); *Christy v. Hodel*, 857 F.2d 1324, 1336 (9th Cir. 1988) (finding that the Secretary could permit "regulated takings" of a grizzly bear through limited sport hunting in certain regions in Montana). It appears subsection (b)(1)(i)(E) was amended in 1992 to exclude permits for hunting grizzly bears in specified

The Government disagrees and claims that it proved element three beyond a reasonable doubt under two theories: (1) that circumstantial evidence and inferences drawn from it are sufficient to satisfy element three and sustain a conviction; and (2) that the doctrine of judicial estoppel prevents the defendant from retracting his admissions that he had no permit to kill a grizzly. The Court will address each theory separately.

## A.    Proving the Essential Elements

The Court reviews de novo whether there is sufficient evidence to sustain a conviction against the defendant. *United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

"Circumstantial evidence and inferences drawn from it may be sufficient to sustain

---

regions of Montana. Today, the plain language of 50 C.F.R. § 17.40(b)(1)(i) does not provide for permitting to kill grizzly bears, and subsection (b)(1)(i)(E) is now "Reserved." Further, this Court is unaware of special permitting for hunting grizzly bears by the United States Fish and Wildlife Service other than permits for incidental takings. Therefore, this Court calls into question the validity of this element of the offense. Nonetheless, because the Government did not raise this issue, and *Clavette* is still good law, the Court will proceed with an analysis regarding whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, although it is clear that at the time of the offense in this case one could not legally obtain a permit to kill a grizzly bear.

a conviction." *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995).

Charette first argues that when the Government spoke after Charette's motion for acquittal at trial, the Government impermissibly shifted the burden onto Charette to prove that he had a permit to take the bear. (Doc. 3-1at 77.) The Government stated:

**MR. DUERK**: Three, the Defendant had no permit to take the bear. There is no evidence that he had a permit to take the bear.

(*Id.*) Thus, the Defendant argues that by failing to establish or offer any evidence that Charette was not permitted to take a grizzly bear, the Government did not meet its burden. Charette adds to this argument by asserting that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

Finally, Charette cites to multiple Ninth Circuit cases that reversed convictions because the government failed to present sufficient evidence on an essential element of the crime. *See United States v. James*, 987 F.2d 648 (9th Cir. 1993) (finding that there was absolutely no fact in evidence regarding the element of the banks being in fact FDIC insured, and that the name of the institutions was insufficient to establish they were federally insured); *United States v. Seaman*, 18

F.3d 649 (9th Cir. 1994) (finding that there was no evidence introduced that proved the value of the damage to the government property exceeded $100); *United States v. Allen*, 88 F.3d 765 (9th Cir. 1996) (finding that no evidence existed regarding one bank's FDIC status, but that evidence did exist regarding the FDIC status of another bank), *United States v. Orduno-Aguilera*, 183 F.3d 1138 (9th Cir. 1999) (finding that the government failed to prove beyond a reasonable doubt that the substances were anabolic steroids); *United States v. Ali*, 266 F.3d 1242 (9th Cir. 2001) (finding that the government failed to prove the bank was a federally insured financial institution at the time of the offense).

The Government counters Charette's arguments by pointing out circumstantial evidence which infers Charette did not have a permit. First, the Government explains that Charette admitted to his ex-wife the morning of trial, "[I]f you, Jessica, are going to testify, I should probably just plead guilty," and that this statement draws the inference that if he had a permit he would never plead guilty. Second, the Government references Charette's statement that he did not want to report the grizzly shooting because he "didn't want to go through the hassle." (Doc. 3-1 at 28.) Thus, if he had possessed a permit, Charette would not have believed it was a hassle to report. Third, the Government cites to agents' testimony at trial that Charette first denied to them that he shot a grizzly, but then

later admitted to the offense only after being warned of the penalties for a false statement. (Doc. 3-1 at 53–54.) Again, the Government contends that "any rational trier of fact could infer that someone with a permit would not have had reason to lie to authorities." (Doc. 7 at 17–18.) Finally, the Government explains that when Charette admitted to authorities that he shot the bear, he never at any point claimed that he had a permit. (Doc. 3-1 at 51–62.) Then, after his attorney, the prosecution, and the Judge explained the elements of the offense, Charette never alerted authorities, his attorney, or the Court that he had a permit. (Doc. 7 at 18.)

The Court agrees with Charette that it is not his burden to satisfy any element of the offense, including whether he did or did not have a permit. This violates the presumption of innocence and shifts the burden of proof. Thus, the Government's fourth argument that a person who indeed had a permit would have eventually come forward with the permit information is without merit.

On the other hand, the Government's first, second, and third pieces of circumstantial evidence are based on actual testimony at trial. The Court is not convinced that Charette's statement to his wife, standing alone, is enough circumstantial evidence to satisfy the Government's burden to prove beyond a reasonable doubt that he did not have a permit. Charette simply stated that if his

wife was going to testify, that he should plead guilty. While it may be logical to draw the inference that this proves he did not have a permit, particularly in conjunction with the other pieces of circumstantial evidence, it certainly does not prove the element beyond a reasonable doubt. It could just as easily be argued that this statement could infer his ignorance of the law as a layperson: since he shot the grizzly bear he assumed he was automatically guilty, even without knowing all of elements of the offense.

However, the two remaining pieces of circumstantial evidence, his statement regarding the "hassle" of reporting the shooting and his actions toward authorities when questioned about the shooting, do provide an inference that Charette did not have a permit. Unlike some of the cases cited by Charette—*James, Seaman, Ali*—here there is direct testimony given at trial which combined with reasonable inferences is enough to satisfy the Government's burden. Agent McElderry testified that during his first interview with Charette, Charette stated that he did not report shooting the grizzly to any officials because "he did not want to go through the hassle." (Doc. 3-1 at 28.) This testimony certainly infers that there would not be a hassle if he had a permit. Then, Agent Lakes testified that when he and Agent McElderry first met up with Charette in a bank parking lot in Ronan, Montana, and questioned him about the investigation

of the grizzly bear, Charette initially denied that he killed a grizzly bear. (Doc. 3-1 at 53.) Agent Lakes then testified that after a few minutes of discussing the consequences of lying during a federal investigation, Charette ultimately admitted to killing the bear. (*Id.* at 54.) This also infers that he did not have a permit because a permitted hunter would not need to lie about killing a bear. Charette's acknowledgment that he knew he would be in more trouble if he did not admit to shooting the bear further suggests the inference that he did not posses a permit.

Two cases cited by Charette are particularly helpful on this issue. In *Orduno-Aquilera*, the defendant was convicted of importing anabolic steroids. 183 F.3d at 1139. The government "had the burden of proving, beyond a reasonable doubt, that the substances in question were 'anabolic steroids.'" *Id.* at 1140. However, the government only offered testimony from a DEA forensic chemist who admitted that he had no expertise on the chemical substance in question. *Id.* The defendant moved for acquittal under Rule 29 on the basis that the government failed to prove the substance was anabolic steroids, the district court denied the motion, and then the defendant appealed. On appeal, the government argued that "the clandestine nature with which Orduno-Aguilera attempted to bring the drugs across the border and the fact that there was a distributable quantity of the drugs" is enough circumstantial evidence to prove

they were anabolic steroids. The Ninth Circuit disagreed and overturned the conviction. The Court determined that even though some circumstantial evidence, combined with reasonable inferences, may be enough, it does not wholly relieve the government of its burden to prove every element beyond a reasonable doubt. *Id.* at 1141. Because the statutory definition of anabolic steroids "states that only certain types of ester derivative of boldenone and testosterone" are enough to meet the "promote muscle growth" definition, and because the government did not offer any evidence regarding the chemical nature of the substance and its ability to promote muscle growth, the government failed to prove this element beyond a reasonable doubt. *Id.*

In *Allen*, the defendant was convicted of making false loan application statements to two federally insured financial institutions. 88 F.3d at 767. On appeal, the defendant argued that the government failed to prove the bank and credit union were federally insured at the time of the alleged conduct. *Id.* The Ninth Circuit found as to the Southern Oregon Federal Credit Union, the government failed to provide enough evidence, circumstantial or otherwise, to prove beyond a reasonable doubt that the bank was federally insured. Consequently, those two counts were vacated. However, as to the Western Bank of Oregon, the Ninth Circuit determined that the government did prove the bank's

insurance status. *Id.* at 769. The Court determined that an exhibit submitted by the government showed the words "FDIC" and "Member FDIC," and that a reasonable juror could infer that the bank was federally insured from this document. *Id.* at 770. Thus, the district court did not err in denying the motion for acquittal as to the Western Bank of Oregon counts. *Id.*

Reviewing the circumstantial evidence in this case in the light most favorable to the prosecution, this Court finds that a rational trier of fact could have found the essential element of not having a permit beyond a reasonable doubt. The fact that Charette specifically stated to authorities that it would have been a "hassle" to report the shooting, and further denied shooting the grizzly bear when first questioned by authorities infers that he did not have a permit. A rational trier of fact could infer that a person in Charette's position who had a permit would not believe it to be a hassle to report to authorities, and would have expeditiously admitted he shot the grizzly bear when questioned by authorities but then explained that he had a permit to do so. Thus, unlike in *Orduno-Aguilera* where there was no testimony about the chemical nature of the steroids in question, here the circumstantial evidence surrounding Charette's demeanor and statements is sufficient to infer beyond a reasonable doubt that he did not have a permit to shoot a grizzly bear. Moreover, this case is distinguishable from *Orduno-Aguilera*

because it is not a drug case. It was the burden of the government in *Orduno-Aguilera* to prove that the illegal substance was in fact anabolic steroids. However, here the Government only had to prove that the Defendant did not have a permit to kill a grizzly bear. One either has a permit or they do not. Furthermore, similar to the exhibits offered in *Allen* inferring that the bank was "FDIC" insured, here the testimony offered by the agents at trial that Charette initially denied shooting the bear, when viewed in light most favorable to the prosecution, infers that Charette did not have a permit to shoot the grizzly bear. Therefore, Charette's motion for an acquittal due to the Government failing to prove the essential elements of the crime is denied.

## B.    Judicial Estoppel

The Government also contends that the doctrine of judicial estoppel prevents Charette from retracting his previous position that he did not have a permit. *See State of Arizona v. Shamrock Foods Co.*, 729 F.2d 1208 (9th Cir. 1984); *Garcia v. Andrus*, 692 F.2d 89 (9th Cir. 1982). The Government explains that Charette's admission during his change of plea hearing that he did not have a permit to shoot the bear now contradicts his Rule 29 argument that the Government did not prove this element. (Doc. 7 at 21-22.) Charette counters and argues that this doctrine does not apply because the Magistrate Judge refused to

accept Charette's guilty plea and ordered a trial; thus, because the Government did not offer the change of plea hearing transcript at trial it is not evidence.

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1148 (9th Cir. 2011). It "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner v. United States*, 547 U.S. 489, 504 (2006). To determine whether to apply the doctrine, a district court typically considers: "(1) whether a party's later position is clearly inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position; and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair detriment on the opposing party." *Liquidators of European Fed. Credit Bank*, 630 F.3d at 1148 (internal citations and quotations omitted).

This Court agrees with Charette that judicial estoppel does not apply here. First, Charette is not changing his position on an argument he raised previously; he maintains the same argument in his appeal of the Rule 29 motion that he made at trial: the Government did not prove all the elements of the offense. Further, the Government has not persuaded the Court that it properly introduced the change of

-15-

plea testimony to the trier of fact at trial. Similar to *James*, where the Ninth

Circuit held that an essential element was not proven because the stipulation of the

FDIC status of the banks was never introduced at trial or read to the jury, here the

Government cannot argue judicial estoppel regarding Charette's testimony given

during his change of plea hearing when it was never introduced as evidence at

trial. 987 F.2d at 652. Furthermore, when the Government began its closing

argument at trial and attempted to introduce testimony about Charette's change of

plea hearing, the defense objected and the court sustained that objection because it

was not offered as evidence. Magistrate Lynch stated, "I base my decision on

what I've heard in this courtroom today." (Doc. 3-1 at 96.) Thus, because the

Government bears the burden to prove all elements of a crime beyond a reasonable

doubt at trial and the change of plea testimony transcript was not offered at trial,

the Government cannot raise judicial estoppel.

Accordingly, IT IS ORDERED that the judgment and sentence of

Magistrate Judge Jeremiah C. Lynch is AFFIRMED.

Dated this 15th day of March, 2017.

Dana L. Christensen, Chief Judge
United States District Court

-16-